**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BENN YINGLING,

                Plaintiff,

vs.                                    Case No. 3:14-cv-945-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Benn Yingling ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff, who has undergone spinal fusions and a laminectomy, alleges an inability to work as result of "back injury," "spondylisthesis," "spondylosis," "arthritis" "increasing inability to stand, sit and walk," and "radicular pain radiating down both lower extremities[.]" Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed December 23, 2014, at 65, 83 (some capitalization omitted).  On May 29, 2012, Plaintiff filed an application for DIB, alleging an onset disability date of May 5, 2011.  Tr. at 185-86. Plaintiff's application was denied initially, see Tr. at 64, 81, 100, 113-18, and was denied upon reconsideration, see Tr. at 101, 111, 122-27.

---

     [1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed December 23, 2014; Reference Order (Doc. No. 13), signed December 26, 2014 and entered December 30, 2014.

On October 18, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 38-59.[2]  The ALJ issued a Decision on December 6, 2013, finding Plaintiff not disabled through the date of the Decision.  Tr. at 22-32.  On June 17, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 5-7, thereby making the ALJ's Decision the final decision of the Commissioner.  On August 8, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal.  See Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 17; "Pl.'s Mem."), filed March 12, 2015, at 1, 8, 19.  The first issue is whether the ALJ erred in handling various opinions of Aldo Rosemblat, M.D., Plaintiff's treating neurosurgeon.  Pl.'s Mem. at 1, 8.  The second issue is whether this Court should remand the matter under sentence six of 42 U.S.C. § 405(g) for consideration of a functional capacity evaluation ("FCE") that was performed on October 7, 2013, prior to the ALJ rendering the Decision, but was not timely submitted by Plaintiff's prior counsel to the ALJ or the Appeals Council.[3]  Id. at 1, 19.  Plaintiff's current counsel attached the FCE to Plaintiff's Memorandum filed in this Court.  Id. at Ex. 1.  On July 13, 2015, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22;

---

[2]        After the hearing, on October 23, 2013, the ALJ admitted additional evidence in the form of a summary of an October 3, 2012 consultative examination by Peter Knox, Psy.D.  Tr. at 178-84, 312.

[3]        On June 19, 2014, two days after the Appeals Council denied review, Plaintiff's attorney representative submitted the FCE to the Appeals Council.  Tr. at 60-63.  On June 24, 2014, Plaintiff's attorney representative submitted a brief to the Appeals Council containing argument in support of his request for review.  Tr. at 1-4.

"Def.'s Mem.") addressing the issues raised by Plaintiff.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 24-32.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 5, 2011, the alleged onset date." Tr. at 24 (emphasis and citation omitted).  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: disorders of the spine." Tr. at 24 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[Plaintiff]

---

4        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that "[Plaintiff] has the residual functional capacity [("RFC")] to perform the full range of sedentary work as defined in 20 CFR § 404.1567(a)." Tr. at 26.  At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work" as a "Carpenter" and a "Bartender[.]" Tr. at 31.  At step five, after considering Plaintiff's age ("42 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ applied the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 31 (emphasis and citations omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from May 5, 2011, through the date of th[e D]ecision." Tr. at 32 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff first challenges the manner in which the ALJ handled the various opinions of Dr. Rosemblat, Plaintiff's treating neurosurgeon. Second, Plaintiff contends the matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the FCE that was submitted to this Court. The issues are addressed in turn.

### A. Dr. Rosemblat's Opinions

#### 1. Summaries of Opinions and Notes

The ALJ addressed two categories of opinions that were offered by Dr. Rosemblat: statements in 2012 treatment notes that, according to the ALJ, "indicate [Plaintiff] could perform sedentary work"; and a September 2013 Physical Medical Source Statement. Tr. at 30-31. Brief summaries of these opinions, as well as pertinent treatment notes, follow.

As to the first category of opinions, shortly after Plaintiff's April and May 2012 back surgeries,[5] Dr. Rosemblat included in his treatment notes a number of statements regarding Plaintiff's employability.  On June 19, 2012, as Plaintiff was still recovering, Dr. Rosemblat wrote:

> In regards to work, I told the patient that he could not return to his former line of work for at least another 4 months.  He used to work as a trim carpenter.  I would anticipate that he could do some of what he did before if he had the proper helper, but I also encouraged him to try to improve his computer skills and other skills that could considerably allow him to get a job that does not have the same physical demands as the job that he had prior to this surgery.

Tr. at 411; see also Tr. at 578 (duplicate).  Then, on July 31, 2012, Dr. Rosemblat wrote:

> I had a long conversation today with Mr. Yingling and his wife regarding future employability.  The patient was a carpenter before, and although he mostly did trim carpentry, it is unlikely that he will meet the physical demands of a carpenter in the future.  Therefore, I basically told the patient to try to complete his schooling and get his GED and acquire minimal clerical skills that will allow him to get some type of clerical, secretarial, or concierge-type job in the relatively near future.

Tr. at 409; see also Tr. at 576 (duplicate).  In a note documenting the next follow up visit on September 17, 2012, Dr. Rosemblat summarized results of a CT scan that had been performed; discussed Plaintiff's pain; and stated the following regarding Plaintiff's employability:

> The patient is presently trying to prepare for taking his GED, and he is taking courses online in order to see if he could return to some clerical occupation. He basically is disabled for his previous work as a carpenter, and I do not believe that with his residual symptoms he will be able to do any job that goes past the descriptions of light to medium according to the Dictionary of Jobs and Titles.  He is basically being encouraged to try to further his education and eventually be able to secure some clerical-type job.  He is presently applying for social security disability, and he was told to continue with this process, as

---

[5]     See, e.g., Tr. at 453-54, 470-72, 473-75 (discussing surgeries).

> I am not totally sure that he will be able to do shift work that requires 8-10 hours a day.

Tr. at 574.  Dr. Rosemblat also stated, "In terms of pain medication, he is taking occasional Lortab.  I offered a referral to pain management.  He says he does not to [sic] take pain medication on [sic] chronic basis.  We will reassess this situation when he returns in January."  Tr. at 574.

Dr. Rosemblat eventually did refer Plaintiff to a pain management specialist. <u>See</u> Tr. at 587 (January 21, 2013 note stating that Plaintiff "[w]ill need referral to pain management"). On March 7, 2013, while Plaintiff was under the care of a pain management specialist, Dr. Rosemblat noted that he "[c]ontinues with difficulties in prolonged standing[,] walking and sitting."  Tr. at 589.  On June 18, 2013, Dr. Rosemblat stated Plaintiff was "[p]resently disabled and under chronic pain management."  Tr. at 592.  He further indicated, "Despite pain medication his normal and painful baseline is slowly getting worse."  Tr. at 592.  In terms of Plaintiff's progression from a surgical standpoint, Dr. Rosemblat wrote in part: "There is no well defined fusion posterolaterally and there is some subsidience of the TLIF [(believed to stand for Transforaminal Lumbar Interbody Fusion Surgery)] cage with moderate foraminal stenosis at that level.  Possible need of ALIF [(believed to stand for Anterior Lumbar Interbody Fusion Surgery)] mentioned to patient and his wife."  Tr. at 592. On August 22, 2013, Dr. Rosemblat noted there was "[n]o change in neuro status since last visit" and instructed Plaintiff to "[c]ontinue pain management."  Tr. at 595.

On September 16, 2013, Dr. Rosemblat completed a detailed Physical Medical Source Statement.  Tr. at 564-68.  Among other things, Dr. Rosemblat opined Plaintiff can sit and stand/walk for less than two hours in an eight-hour day, both for ten minutes at a

time, Tr. at 565; Plaintiff will need unscheduled breaks that will occur "too often to be employable," Tr. at 566; Plaintiff can never lift fifty pounds, can rarely lift twenty pounds, and can occasionally lift up to ten pounds, Tr. at 567; Plaintiff can occasionally twist, stoop, crouch/squat, climb stairs, and climb ladders, Tr. at 567; and Plaintiff can be expected to miss work more than four days per month as a result of his impairments, Tr. at 568.  Dr. Rosemblat also opined on Plaintiff's limitations with reaching, handling, and fingering.  Tr. at 567.  Although Dr. Rosemblat checked a box stating "No" when asked whether Plaintiff has such limitations, he also opined Plaintiff could use his hands and fingers only fifty percent of the day, his arms to reach in front twenty percent of the day, and his arms to reach overhead ten percent of the day.  Tr. at 567.

### 2. Applicable Law

The Regulations instruct ALJs how to properly weigh the medical opinion[6] of a treating physician.[7]  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.

---

[6]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7]  A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

### 3. ALJ's Decision / Analysis

The ALJ wrote as follows regarding Dr. Rosemblat's various opinions:

> Dr. Rosemblat, [Plaintiff's] neurosurgeon, provided multiple statements within the record of [Plaintiff's] work-related abilities. In 2012, Dr. Rosemblat informed [Plaintiff] it was unlikely he would be able to meet the physical demands of his previous carpentry work and he recommended [Plaintiff] get his GED and pursue some type of clerical, secretarial, or concierge-type job or other sedentary work. However, in September 2013, Dr. Rosemblat completed a Medical Source Statement and provided work-related restrictions that would preclude all levels of sustained work activity.

> I give great weight to Dr. Rosemblat's 2012 statements, which indicate [Plaintiff] could perform sedentary work. These statements are consistent with the positive surgical results; results of electrodiagnostic testing th[at] showed only mild L5-S1 radiculopathy; results of post-surgical imaging studies that revealed no residual central canal stenosis, no foraminal stenosis, no nerve root impingement, and intact hardware without evidence of loosening or fracture; [Plaintiff's] demonstrated positive response to pain management treatment; and clinical observations and results of physical examinations that failed to identify substantial functional limitations that would preclude sedentary work.

> I give no significant weight to Dr.Rosemblat's September 2013 statement, as it was not accompanied by any documented worsening of [Plaintiff's] condition. Objective studies from August 2013 showed no significant residual spinal abnormalities that would warrant such work-related restrictions and contemporaneous pain management records showed improved pain control with treatment, reportedly 3/10, and greater than 70% temporary relief

of symptoms with injection therapy.  Further, it is noted that Dr. Rosemblat's statement contained inconsistencies regarding use of [Plaintiff's] upper extremities.  Although Dr. Rosemblat reported [Plaintiff] had no significant limitations with reaching, handling, or fingering, he then indicated [Plaintiff] was limited to using his hands for gross and fine manipulation 50% of a workday, and use of his arms to 20% of the workday for reaching in front of the body and only 10% for reaching overhead, and he provided no reason for the limitations. Accordingly, as Dr. Rosemblat's September 2013 opinion contains inconsistencies, is not supported by his own treatment records, and is not bolstered by the other substantive evidence of record, I give little weight to this opinion.

Tr. at 30-31 (citations omitted).

Plaintiff contends that the assignment of great weight to the 2012 opinions contained in the treatment notes "fails to adequately, and more importantly, accurately address all of the medical opinions of Dr. Rosemblat found in his treatment notes."  Pl.'s Mem. at 11. Plaintiff further argues "that the ALJ is patently mistaken in [the] determination that Dr. Rosemblat's 'statements . . . indicate [Plaintiff] can perform sedentary work' and the reliance upon these statements by the ALJ to support [the RFC] finding cannot withstand judicial scrutiny."  Id. (quoting Tr. at 30).

Regarding the ALJ's assignment of no significant weight to Dr. Rosemblat's September 2013 Medical Source Statement, Plaintiff argues most of the reasons provided by the ALJ are inaccurate and inconsistent with the evidence.  Id. at 14-15.  Addressing the alleged inconsistency regarding Plaintiff's use of upper extremities within Dr. Rosemblat's opinion, Plaintiff acknowledges the apparent inconsistency on the form.  Id. at 16.  Plaintiff contends, however, that Dr. Rosemblat having checked the "No" box when asked about significant upper extremity limitations was quite possibly a clerical error given that he next opined on the degree of limitations.  Id. at 16 (referring to Tr. at 567).  Alternatively, Plaintiff

contends that perhaps the doctor believed that even his assigned limitations are not significant, which in turn would mean that there is no inconsistency on the form. Id. at 16 n.4. In either event, Plaintiff points out that the ALJ did not re-contact Dr. Rosemblat to clarify the alleged inconsistency, as the ALJ is empowered to do. Id. at 16.

Defendant does not respond to Plaintiff's arguments addressing the ALJ's handling of Dr. Rosemblat's 2012 opinions. See Def.'s Mem. at 3-11. Regarding the September 2013 opinion, Defendant contends the reasons provided by the ALJ for assigning it no significant weight are supported by substantial evidence. Id. at 8-9.

The undersigned finds that the ALJ erred in handling Dr. Rosemblat's various opinions. First, as to the 2012 opinions contained in the notes, the ALJ mischaracterized them as indicating that Dr. Rosemblat opined Plaintiff "could perform sedentary work." Tr. at 30. As summarized above, Dr. Rosemblat simply remained optimistic after the surgery that Plaintiff eventually could perform some less physically demanding work than his previous work as a carpenter. By September 2012, however, Dr. Rosemblat began to doubt that Plaintiff could perform full-time work of any kind and encouraged Plaintiff to continue the process of applying for disability. And of course, when asked to opine regarding specific work-related functions in September 2013, Dr. Rosemblat assigned limitations that would preclude all work.

Regarding the September 2013 opinion, the ALJ's main reasons for assigning it no significant weight are either not supported by substantial evidence or are inaccurate. First, the ALJ inaccurately stated that the September 2013 opinion "was not accompanied by any documented worsening of [Plaintiff's] condition." Tr. at 30. Yet, earlier that year, Dr.

Rosemblat had referred Plaintiff to a pain management specialist; even after Plaintiff was undergoing injection therapy and taking different medication, by June 2013, Dr. Rosemblat stated that "[d]espite pain medication his normal and painful baseline is slowly getting worse." Tr. at 592. Dr. Rosemblat also considered the possibility of Plaintiff needing another fusion surgery, noting that there was "no well defined fusion posterolaterally and there is some subsidience of the TLIF  [(believed to stand for Transforaminal Lumbar Interbody Fusion Surgery)] cage with moderate foraminal stenosis at that level." Tr. at 592.

Second, the ALJ relied on "[o]bjective studies from August 2013 [that] showed no significant residual spinal abnormalities that would warrant such work-related restrictions and contemporaneous pain management records [that] showed improved pain control with treatment, reportedly 3/10, and greater than 70% temporary relief of symptoms with injection therapy." Tr. at 30 (citations omitted). Plaintiff underwent a lumbar myelogram and a CT in August 2013, Tr. at 492-93, that Dr. Rosemblat summarized on August 22, 2013 as showing "[n]ormal delayed post-op with patent foramina and no central or lateral stenosis. Instrumentation is intact." Tr. at 595. Dr. Rosemblat stated that there was "[n]o change in neuro status since last visit" and instructed Plaintiff to continue pain management. Tr. at 595. As for the contemporaneous pain management record to which the ALJ referred, dated September 10, 2013, it actually states Plaintiff reported "pain that is 5/10, constant, sharp, dull, achy, burning." Tr. at 511. Regarding the effects of the medication regimen, the record states Plaintiff experienced "fleeting (>70%) and transient relief symptoms with the current regimen since the last visit." Tr. at 511. Elsewhere in the pain management note, it states that Plaintiff "had temporary rel[ie]f (>70%) of LBP symptoms with each SI injection[.]" Tr. at

512. Thus, the administrative transcript does not support the ALJ's characterization of the effects of the pain management treatment.

Finally, the ALJ relied on "inconsistencies" in Dr. Rosemblat's September 2013 opinion regarding the use of Plaintiff's upper extremities. Tr. at 30. Dr. Rosemblat having checked the "No" box when asked about significant limitations in this area, but then assigning various limitations, does appear to be inconsistent. This is just one portion of the overall detailed opinion, however, and as explained above, the ALJ did not provide adequate reasons for discounting the remainder of it.

For all of the foregoing reasons, the matter is due to be reversed and remanded for reconsideration of Dr. Rosemblat's opinions.

## B.  Sentence Six Remand Request

Plaintiff further requests that the matter be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of the FCE that was submitted to this Court. See Pl.'s Mem. at 19-25. Because the matter is due to be reversed and remanded for further consideration of Dr. Rosemblat's opinions, and because the FCE addresses similar matters as do Dr. Rosemblat's opinions, the Administration shall ensure on remand that the FCE is considered.

## V.  Conclusion

After due consideration, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

        (A)     Reevaluate the opinion of Dr. Rosemblat;

        (B)     Receive and evaluate the Functional Capacity Evaluation dated October 7, 2013; and

        (C)     Take such other action as may be necessary to resolve this matter properly.

2.     The Clerk is further directed to close the file.

3.     In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

    **DONE AND ORDERED** at Jacksonville, Florida on March 15, 2016.

                                            *James R. Klindt*

                                            JAMES R. KLINDT
                                        United States Magistrate Judge

kaw
Copies to:
Counsel of record